| | |
|---|---|
| **CIC SERVICES, LLC**<br>1111 N. Northshore Drive<br>Suite N325<br>Knoxville, Tennessee 37919<br><br>  *Plaintiff,*<br><br>v.<br><br>**INTERNAL REVENUE SERVICE**<br>1111 Constitution Avenue, N.W.<br>Washington, D.C. 20004,<br><br>**DEPARTMENT OF THE TREASURY**<br>1500 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20220<br><br>-and-<br><br>**THE UNITED STATES OF AMERICA**<br> Serve:<br><br> HONORABLE LORETTA E. LYNCH<br> Attorney General of the United States<br> 950 Pennsylvania Avenue, N.W.<br> Washington, D.C. 20530,<br><br> -and-<br><br> NANCY STALLARD HERR<br> United States Attorney's Office<br> 800 Market Street, Suite 211<br> Knoxville, Tennessee 37902<br><br>  *Defendants.* | CIVIL CASE NO. _____<br><br><br>JUDGE _____<br><br><br><br><br>**VERIFIED COMPLAINT FOR<br>INJUNCTIVE AND<br>DECLARATORY RELIEF** |

  Plaintiff, by counsel, in accordance with Rules 2-3 and 8-11 of the Federal Rules of

Civil Procedure, states its claims for relief against the Defendants as follows:

## SUMMARY OF CASE

This lawsuit seeks injunctive relief, setting aside Notice 2016-66 and/or prohibiting Internal Revenue Service ("IRS") enforcement of its provisions regarding so-called "micro-captive transactions," and related declaratory relief. Notice 2016-66 issued on November 1, 2016, went into effect on the same date, requiring the filing of certain informational returns by the Plaintiff and thousands of other taxpayers on January 30, 2017, under threat of severe monetary penalties, public embarrassment and ridicule. The bases for the lawsuit are twofold: *first*, the IRS unlawfully issued Notice 2016-66, which qualifies as a "legislative-type rule," without first complying with the mandatory notice-and-comment provisions of the Administrative Procedure Act ("APA", 5 U.S.C. §553); and *secondly,* Notice 2016-66 is *arbitrary and capricious* and *ultra vires* in nature, lacking underlying authority and the reasoned-analysis footing required by the APA (5 U.S.C. §706(2)(A)).

## JURISDICTION & VENUE

1. This Court has jurisdiction over the causes of action herein alleged under 28 U.S.C. §1331 ("federal question" jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States) pursuant to the APA, 5 U.S.C. §702 (authorizing judicial review of alleged legal wrongs arising from agency action)..

2. Venue lies here under 28 U.S.C. §1391(e)(C) (judicial district in which defendant is the United States or a federal agency and the plaintiff resides in such district and the cause of action does not involve real property).

## IDENTIFICATION OF THE PARTIES

3. Plaintiff CIC Services, LLC, ("CIC"), a manager of captive insurance companies, is a limited liability corporation with offices at 1111 N. Northshore Drive, Suite N325, Knoxville,

Tennessee 37919.

4. Defendants IRS and the Department of the Treasury (both agencies of the United States) maintain their principal offices in the District of Columbia. Service upon the Defendant United States will be made upon the Attorney General and the U.S. Attorney for the Eastern District of Tennessee.

## GENERAL ALLEGATIONS

The general factual allegations giving rise to the causes of action asserted in this case are as follows:

### Relevant Background

5. "Captive insurance companies" ("captives") are a variety of property and casualty insurance companies that are owned and used by the primary insured itself or by the owner of the insured or an affiliated company of the insured to insure risks of the insured or its affiliate or of other insurance companies. They do not offer insurance to the public; rather, loosely speaking, they are vehicles for a type of formalized and partial self-insurance.

6. For tax purposes, current law recognizes three general levels of captives:

(a) Large captives that can receive unlimited premiums and are therefore generally maintained by large, public companies like those listed on the Fortune 500 to achieve a multiplicity of financial and economic benefits conferred by Congress (26 U.S.C §832);

(b) Smaller captives that can receive premiums not exceeding $1.2M per year and are therefore generally maintained by small and mid-sized companies and are allowed to achieve many of the same benefits realized by Fortune 500 companies. (26 U.S.C. §831(b)) [1]/; and

---

[1]/ §831(b) was substantially rewritten by Congress in 2016 for tax years after 2016. *See* Pub. L. 114-113, Sec. 333. This legislation reaffirmed the long-standing public policy in support of §831(b) captives and increased the amount of the premium ceiling from $1.2M to $2.2M. *Id.* The case at bar involves only 2016 and prior years; therefore, the new law is not implicated in Notice 2016-66.

3

(c) The smallest captives that can receive premiums not exceeding $350K per year and provide commensurate benefits. (26 U.S.C. §501(c)(15).

7. IRS Notice 2016-66, a copy of which is attached hereto as **Exhibit 1**, relates to the second category of captive described immediately above, i.e., §831(b) captives.

8. For many years, §831(b) and related "safe-harbor" revenue rulings have advanced important public policy goals by authorizing a range of tax benefits including: (a) the obtainment of customized insurance coverage through an insurance company established and controlled by the taxpayer; (b) the deductibility of up to $1.2M in annual insurance premiums paid to the captive; (c) no tax due on the insurance premiums received by the captive; and (d) the return of any captive profits to the taxpayer in the form of qualified dividends which are taxed at capital gains rates.

9. The IRS attacked the existence of the large captive insurance companies for decades and lost significant court cases in the U.S. Circuit Courts, thus effectively compelling the IRS's retreat. Having lost its battle against the large captives, the IRS turned its attention to the smaller §831(b) captives.

**Initiation of IRS 831(b) Audit Program**

10. Beginning in or about 2012, the IRS initiated a broad-based, dragnet-type audit program, generally claiming that §831(b) has fostered abusive tax-shelter arrangements and thereby disparaging many hundreds, perhaps thousands, of insureds, their captives, and their professional captive managers and other advisors such as the Plaintiff. [2]/

---

[2]/ As a practical matter, it is essential for small business people to engage a §831(b) captive manager due to the substantial insurance infrastructure requirements imposed by IRS rules and regulations and requirements of the jurisdiction licensing the captive. §831(b) captive managers include small and medium-size businesses like the Plaintiff as well as some very large NYSE insurance companies like the

11. The IRS audit program has included sweeping document demands, issued without cause other than the mere existence of a §831(b) captive.

12. The IRS has effectively tar-brushed all §831(b) captives (and related entities) by including them in its so-called "Dirty Dozen" list of "Tax Scams," implying the existence of widespread and egregious taxpayer abuse, scams, fraud, and the like and tainting legitimate captive managers like Plaintiff as "promoters" of "tax avoidance schemes.". *See* IRS News Release, attached hereto as **Exhibit 2**.

13. As a result of the IRS audit program, the §831(b) market has, of course, been substantially constricted, negatively affecting captive managers and others..

14. Although there are many audits underway, only three 831(b) cases have been tried (all in the U.S. Tax Court) since the audit program began: *Avrahami v. Commissioner,* Tax Ct. Dkt. No. 17594-13, *Caylor Land & Development v. Commissioner*, Tax Ct. Dkt. No. 17204-13, *et seq.,* and *Wilson v. Commissioner,* Tax Ct. Dkt. No. 026547-13.

15. All three of the above-captioned cases were tried before U.S. Tax Court Judge Mark Holmes, who has announced that at least one of the cases will be decided by an *en banc* Tax Court decision to be issued in early 2017, thus providing some guidance and a level of certainty for the captive community going forward

---

Marsh & McLennan Companies and Arthur Gallagher & Co. provide §831(b) captive management services.

**Promulgation of Notice 2016-66**

16. IRS Notice 2016-66 designates certain "micro-captive transactions" [3] as "transactions of interest" (Notice at §3.01) and such designation makes many of their operations "reportable transactions" under 26 CFR 1.6011-4(b)(6).

17. Notice 2016-66 requires reportorial returns covering broad categorical types of activity (§3.05) engaged in by §831(b) captives which (a) had combined claims and administration expenses totaling less than 70% of premiums; or (b) engaged in loans with an affiliate. *See* Notice at §2.01(e). This would include the vast majority of §831(b) captives. Indeed, were the same defining characteristics applied to ordinary commercial insurance carriers, many of them would be implicated as well.

18. The defining characteristics set forth immediately above are not prohibited or otherwise deemed contrary to law. *See* 26 U.S.C. §831(b). Indeed, Tax Court precedents have found no fault with loss/expense ratios as low as 1% over extended periods of time [4] and have not challenged loans by captives to affiliates. [5]

19. Despite the permissibility of transactions with such characteristics, Notice 2016-66 authorizes substantial penalties for a failure to report transactions of interest by two distinct classes of persons, as follows:

---

[3] / The IRS calls the transactions it describes in Notice 2016-66 "micro-captive transactions" and says those transactions are governed by 26 U.S.C. §831(b). Micro-captive transactions, however, are not governed by §831(b); rather, they are governed by 501(c)(15). "Mini-captive transactions" are covered by §831(b) and match the transactions described in Notice 2016-66. Inasmuch as Notice 2016-66 describes transactions that match mini-captive transactions, and says the transactions it describes are governed by §831(b), it does not appear the IRS intended to label micro-captive transactions as "transactions of interest"; it is simply a mistake in labeling.

[4] / See RVI Guaranty v. Commissioner, 145 T.C. No. 9 (2015) ("An insurer may go many years without paying an earthquake claim; this does not mean that the insurer is failing to provide'insurance""); *see also Securitas Holdings, Inc., et al. v. Commissioner,* T.C. Memo 2014-225.

[5]/ *See Rent-a-Center v. Commissioner,* 142 T.C. No. 1 (2014).

(a) *First,* insureds, captives, their owners and managers must tell the IRS when they "participate" in a mini-captive transaction. *See* Notice at §3.06, 26 CFR 1.6011-4(a). Failure to do so by the taxpayer incurs a penalty. 26 U.S.C. §6707A.

(b) *Second,* "material advisors" to mini-captive transactions, e.g., lawyers, accountants, and captive managers like Plaintiff, "shall make a return . . . setting forth certain statutorily enumerated information about the transaction (*See* 26 U.S.C. §6111(a)). Again, failure to do so incurs a penalty. 26 U.S.C. §6707A; s*ee also Interior Glass Systems, Inc. v. U.S.,* reported at 118 A.F.T.R.2d 2016 5497 (N.D. Cal., decided August 12, 2016) (violation need not be willful and penalty may not be appealable).

20. Material advisors must also maintain a list identifying each person with respect to whom such advisors acted as a material advisor with respect to a reportable transaction and containing such other information as the Secretary of the Treasury may require (26 U.S.C. §6112(a). Once again, failure to comply may incur a penalty. (26 U.S.C. §6708(a)).

21. IRS Notice 2016-66 was issued on November 1, 2016 and went into effect on the same date. *See* Notice at §3.01. Informational returns, reporting transactions of interest are likely due by thousands of taxpayers across the nation, including captives, captive managers, insureds and their owners, just 90 days after the date of issuance, on January 30, 2017.

22. Notice 2016-66 provided no prior notice or mechanism for public comment, but did invite after-the-fact public comment at §4.

### FIRST CAUSE OF ACTION
### IRS FAILURE TO OBSERVE NOTICE-AND-COMMENT
### REQUIREMENTS IN VIOLATION OF THE APA

23. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-22 *supra.,* as if fully set forth herein

24. The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of the relevant statute, is entitled to judicial review thereof." 5 U.S.C. §702.

25. The APA further empowers this Court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . without observance of procedure required by law." 5 U.S.C. §706(2)(D).

26. Pursuant to the APA, certain "rules" promulgated by an agency must be published in accordance with notice-and-comment procedures. 5 U.S.C. §553. An agency's failure to comply with notice-and-comment procedures is grounds for invalidating the rule.

27. Notice 2016-66 is a "rule" within the meaning of the APA, defined as the "whole or part of an agency statement of general or particular applicability and future effect designated to implement, interpret, or prescribe law or policy." *See* 26 U.S.C. §551(4).

28. The IRS is an "agency" within the meaning of the APA. *See* 5 U.S.C. §§551(1) and 552(f)(1).

29. Notice 2016-66 qualifies as a "substantive" or "legislative-type" agency rule, which is the type that, prior to its promulgation, must be subjected to the APA's notice-and-comment regime as a matter of law. *See* 5 U.S.C. §553.

30. The APA's four-step notice-and-comment regime requires the following:

*First,* the agency must issue a "general notice of proposed rule-making" that shall be published in the Federal Register (5 U.S.C. §553(b), "not less than 30 days before its effective date." *Id.*

*Second,* "the agency shall give interested persons an opportunity to participate in the rule-making through submission of written data, views or arguments." *Id.* at §553(c).

8

*Third,* the agency "must consider and respond to significant comments received during the period for public comment." *See Perez v. Mortgage Bankers Ass'n,* 135 S. Ct. 1199. 1203 (2015).

*Fourth*, when the agency files the final rule, it shall include in the rule's text "a concise general statement of [its] basis and purpose." 5 U.S.C. §553.

31. In issuing Notice 2016-66, the IRS failed to comply with the above requirements.

32. No potential exceptions to the notice-and-comment requirements apply to Notice 2016-66 as it is neither an "interpretive rule" under 5 U.S.C.§§553(b)(A), nor was there any finding of good cause to bypass such procedural requirements in accordance with 5 U.S.C. §§553(b)(B), (d)(3).

33. Having failed to comply with the notice-and-comment rulemaking requirements, Notice 2016-66 was promulgated unlawfully and Plaintiff has been and will be adversely affected by Defendants unlawful conduct, which is reviewable by this Court under the APA, 5 U.S.C.§706.

34. The IRS acted unlawfully in promulgating Notice 2016-66 and the Department of the Treasury participated in such unlawful action by the delegation of its authorities and otherwise.

35. Plaintiff, if required to comply with Notice 2016-66, will sustain actual damages that are concrete and particularized in nature.

36. Plaintiff, if compelled to comply with Notice 2016-66, estimates that it will be required to expend hundreds of man hours and in excess of $60, 000 per year in direct and indirect costs in satisfaction thereof or risk substantial penalties, beginning with the original reporting date on January 30, 2017 and every year thereafter.

## SECOND CAUSE OF ACTION
## ARBITRARY, CAPRICIOUS AND *ULTRA VIRES* ACTIONS
## IN VIOLATION OF THE APA

37. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 36, *supra.,* as if fully set forth herein.

38. The APA empowers this Court to "hold unlawful and set aside agency actions, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §706(2)(A).

39. The APA also empowers this Court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory rights [*ultra vires* actions]." 5 U.S.C. §706(2)(C).

40. Notice 2016-66 is the result of arbitrary and capricious rulemaking that is not based on a reasoned analysis as legally required by the APA.

41. In Notice 2016-66, Defendants purport to be acting to require informational returns regarding transactions of interest as possible tax avoidance transactions pursuant to existing authority, pointing to 26 CFR 1.6011-4(b)(6) and I.R.C. §§ 6111 and 6112. *See* Notice 2016-66 at 1-2.

42. 26 CFR 1.6011-4(b)(6) merely provides that a transaction of interest is one which ". . . is the same as or substantially similar to one of the types of transactions that the IRS has identified by notice, regulation, or other form of published guidance. . ."

43. In adopting 26 CFR 1.6011-4(b)(6), the IRS indicated as follows:

". . . a transaction of interest is a transaction that the IRS and the Treasury Department believe has a potential for tax avoidance or evasion, <u>but for which the IRS and the Treasury Department lack enough information to determine whether the transaction should be identified specifically as a tax avoidance transaction.</u>"

72 FR 434146-01 at p. 2, Transactions of Interest (emphasis added).

44. In sum, the IRS claims legal authority to require the filing of informational returns regarding behavior which it deems a "transaction of interest," while it is admittedly unable to implicate such behavior in any definable tax avoidance scheme despite having already conducted a substantial number of §831(b) audits.

45. Most, if not all, of the information legitimately needed by the IRS to assess the legal validity of any §831(b) transaction is already available to it through normal channels and filings that do not impose additional burdens or expenses on filers. *See* IRS Form 1120-PC, attached hereto as **Exhibit 3**, the annual tax return which each §831(b) captive is required to file..

46. The IRS had no rational foundation for the imposition of additional informational return requirements in accordance with Notice 2016-66 consistent with their legal authority to conduct the lawful administrative enforcement of our federal tax laws. Therefore, it is in violation of 5 U.S.C. §706(2)(A).

47. In promulgating Notice 2016-66, the IRS and Treasury have engaged in *ultra vires* behavior in excess of their statutory authority and, therefore, it is in violation of 5 U.S.C. §706(2)(C).

48. Had the IRS permitted public comment prior to the issuance of Notice 2016-66, it would have been alerted to the above-referenced facts and problems and it would have had an opportunity to adjust its reportorial demands accordingly. Its failure to do so is further evidence of arbitrary and capricious decision-making.

49. Plaintiff and numerous other taxpayers, if compelled to comply with Notice 2016-66, will not only be required to expend substantial sums of money in satisfaction thereof; they will also be wrongfully and irrevocably harmed and aggrieved by the false implication that they

are members of the IRS's "Dirty Dozen" and participants in a tax scam.

50. Defendants unlawful behavior has seriously damaged the Plaintiff who, if compelled to comply with Notice 2016-66, will be required to expend substantial sums of money for years to come in satisfaction thereof, or risk substantial penalties for noncompliance.

51. Notice 2016 unfairly implicates many legitimate captives, unnecessarily requires burdensome and expensive filings by a substantial number of taxpayers, and, without foundation, seeks to publicly taint the entire captive industry as one filled with unlawful operatives.

52. While the avowed purpose of Notice 2016-66 is to obtain information that will assist the IRS in determining whether captives are being improperly utilized for tax avoidance purposes, it would appear that the IRS seeks to subvert the express will of Congress as embodied in §831(b) and undermine the reverse-preemption provisions of the McCarran-Ferguson Act, 15 U.S.C. §1011, *et seq.*

## THIRD CAUSE OF ACTION
## REQUEST FOR DECLARATORY JUDGMENT

53. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 52, *supra.,* as if fully set forth herein.

54. The Declaratory Judgment Act, 28 U.S.C. §2201, and Rule 57 of the Federal Rules of Civil Procedure grant this Court authority to declare Plaintiff's legal rights when an actual controversy exists between the parties.

55. As stated herein above, Plaintiff and Defendants have adverse legal interests that are of sufficient immediacy and reality to warrant the issuance of a declaratory judgment in accordance with 28 U.S.C. §2201.

56. Defendants failed to comply with the APA's notice-and-comment provisions in promulgating Notice 2016-66. Further, such Notice is *arbitrary and capricious* in nature and *ultra vires* to the authorities lawfully conferred upon the IRS.

57. Nothing in this lawsuit seeks to restrain the assessment or collection of taxes, only the arbitrary demand for information unrelated to any instances of such assessment or collection.

58. For the above-described reasons, Plaintiff respectfully requests this Court to declare that Notice 2016-66 violates the APA and to invalidate such Notice.

## REQUESTS FOR RELIEF

WHEREFORE, in accordance with the foregoing, Plaintiff respectfully requests that the Court provide relief to it as follows:

A. Set aside and/or enjoin the enforcement of Notice 2016-66 as an unlawful IRS rule;

B. Enter judgment declaring that Notice 2016-66 is unlawful and in violation of the APA; and

C. Order such additional relief, including the imposition of fees and costs, as the Court deems equitable, just, and proper in the circumstances.

## VERIFICATION

SEAN KING, a Founder and Principal of Plaintiff CIC Services, LLC, in accordance with 28 U.S.C. § 1746, hereby verifies under penalty of perjury that the factual allegations set forth in this complaint, as differentiated from legal representations and conclusions included herein, are true and correct.

*/s/ Sean M. King*
SEAN KING

Date: December 28, 2016

Respectfully submitted,

s/ Kenneth A. Lazarus
Kenneth A. Lazarus (motion for admission pending)
LAZARUS & ASSOCIATES
1025 Thomas Jefferson St., NW, Suite 110-G
Washington, D. C. 20007
Tel: (202) 295-2330
Email: lazaruslaw@aol.com

s/ Adam R. Webber
Adam R. Webber (motion for admission pending)
FALKE & DUNPHY LLC
30 Wyoming Street
Dayton, Ohio 45409
Tel: (937) 222-3000
Email: webber@ohiolawyers.cc

-and-

s/ E. Jerome Melson
E.Jerome Melson (TN Bar No. 013340)
GENTRY TIPTON & McLEMORE P.C.
900 South Gay Street, Suite 2300
Knoxville, Tennessee 37902
Tel: (865) 525-5300, Ext. 124
Email:ejm@tennlaw.com

Of Counsel:
W.Y. Alex Webb
WEBB & COYLE PLLC
910 N. Sandhills Blvd.
Aberdeen, NC 28315